UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WEST NEVADA PRECIOUS METALS, CORP., <br><br>        Plaintiff,<br><br>vs.<br><br>FABIO SUNAGO; ALL JAPAN LIQUOR MERCHANT ASSN.; and DOES I through X, inclusive,<br><br>        Defendants.<br>_____<br>ALL JAPAN LIQUOR MERCHANT ASSN.,<br><br>        Counterclaimant,<br><br>vs.<br><br>WEST NEVADA PRECIOUS METALS CORP., and ALBERTO DOCOUTO,<br><br>        Counterdefendants. | Case No.: 2:05-cv-00886-RLH-GWF<br><br>**O R D E R**<br><br>(Motions for Summary Judgment–#134 , #142) |

        Before the Court is Defendant/Counterclaimant All Japan Liquor Merchant Association's ("All Japan") **Motion for Summary Judgment** (#134), filed December 22, 2006. The Court has also considered All Japan's Statement of Undisputed Material Facts (#135), filed

1

December 22, 2006. The Court has also considered Plaintiff/Counterdefendant West Nevada Precious Metal's ("West Nevada") Opposition (#149), filed January 16, 2007, and All Japan's Reply (#154), filed January 29, 2007.

Also before the Court is Defendant/Counterclaimant Fabio Sunago's **Motion for Summary Judgment** (#142), filed January 10, 2007, and supporting documents, along with Plaintiff/Counterdefendant West Nevada's Opposition (#157), filed February 5, 2007, along with supporting documents. Before a Reply was filed, the West Nevada and Sunago filed a **Stipulation and Order to Dismiss** (#160), filed February 7, 2007, signed by the Court on February 15, 2007. Therefore, Sunago's Motion for Summary Judgment (#142) is denied as moot.

## BACKGROUND

The current Motion moves for summary judgment on the claims asserted by Plaintiff West Nevada against All Japan, and on the counterclaims of Defendant All Japan against West Nevada and DoCouto.

**I. All Japan's Claims against West Nevada and DoCouto**

All Japan's claims arise from two alleged breaches of contract by West Nevada. The contracts at issue are two loans issued by All Japan to West Nevada for the purpose of an investment opportunity in West Nevada's interest in pursuing mining claims in Guyana (the "Project"). All Japan became aware of the investment opportunity through an individual named Fabio Sunago ("Sunago"), who All Japan knew from prior unrelated investment opportunities it conducted with Sunago.

Each loan is personally guaranteed by Alberto DoCouto ("DoCouto"), West Nevada's sole officer and director, and secured by a stock pledge agreement. The first loan was issued on February 27, 2004 ("February Loan") for approximately $3,752,516. The second loan was issued on April 30, 2004 ("April Loan") for approximately $2,627,524. Both Loans were due and payable with interest on June 30, 2005 ("Maturity Date"). As of the Maturity Date, neither loan has been repaid.

Ten days prior to the Maturity Date, West Nevada sued All Japan for various causes of action. All Japan argues that West Nevada's suit was filed for the mere purpose of avoiding repayment of the Loans. All Japan counterclaimed, alleging breach of contract and breach of guaranty for the nonrepayment of the Loans. In addition, All Japan alleges that its $6.3 million loan proceeds were not used to fund the Project, rather, DoCouto squandered the proceeds for the benefit of him and his family's personal needs. For these and other actions, All Japan also brings the following claims: four fraud claims, conversion, unjust enrichment, money had and received, account stated, and equitable accounting and constructive trust.

**II. West Nevada's Claims against All Japan**

Likewise, West Nevada's claims against All Japan arise from the issuance of the two Loans. West Nevada does not dispute that it has not repaid the Loans but argues that Sunago was an agent of All Japan who misused and mishandled the Loan funds by way of his signature authority over the Loans. Specifically, West Nevada alleges that Sunago misappropriated the funds by improperly dispersing loan funds, inflating budgets to justify draining the account, not informing West Nevada of the disbursements, and paying inflated invoices and suspect charges, all which allegedly resulted in West Nevada's precarious financial position in which All Japan and Sunago could facilitate a takeover.

In addition to the two written Loans, West Nevada alleges that All Japan orally agreed to loan additional funds, and in reliance upon All Japan's alleged promise, West Nevada stopped seeking alternative sources of funding. West Nevada argues that these actions, among others, caused its failure in the Project and alleges the following causes of action against All Japan: breach of contract, breach of oral contract, promissory estoppel, negligent and intentional interference with prospective economic advantage, breach of implied covenant of good faith and fair dealing, negligence, and fraud.

Additional relevant details are outlined below.

/ /

3

**DISCUSSION**

**I. Summary Judgment Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view all facts and draw all inferences in the light most favorable to the non-moving party. *Shaw v. Santa Monica Bank*, 920 F.Supp. 1080, 1083-84 (9th Cir. 1996) (citations omitted).

In response to a properly submitted summary judgment motion, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002).  The non-moving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991).

**II. All Japan's Counterclaim**

All Japan moves for summary judgment on all of its causes of action against West Nevada and DoCouto.  For the following reasons, the Court grants summary judgment in favor of All Japan on its breach of contract and breach of guaranty claims against West Nevada and DoCouto concerning the February Loan.  The Court denies summary judgment on all other claims.

**A. Breach of Contract Claims**

All Japan moves for summary judgment on its breach of contract claims for both the February Loan and the April Loan ("Both Loans").  Specifically, All Japan argues that West

1  Nevada failed to pay Both Loans on the Maturity Date. West Nevada does not dispute the
2  existence of the contracts, DoCouto's personal guaranty, or that it has not paid them when due.
3  However, as a defense for its nonperformance, West Nevada alleges misappropriation of funds by
4  All Japan. Specifically, it argues that Sunago, an agent of All Japan, mishandled and misused the
5  April Loan funds. West Nevada does not raise this, or any, defense as to the February Loan. Thus,
6  West Nevada has failed to provide a defense to nonpayment of the February Loan. The Court
7  finds that All Japan has made a prima facie showing of a breach of contract and breach of guaranty
8  on the February loan and accordingly grants summary judgment in favor of All Japan on these
9  claims (first and third causes of action). The Court now turns to analysis of the All Japan's
10 breaches of contract and guaranty claims on the April Loan.

**(1). Agency Relationship between All Japan and Sunago**

12  The success of West Nevada's misappropriation of funds defense in opposing All
13 Japan's breach of contract claim hinges on whether Sunago acted as an agent of All Japan, in
14 which case All Japan, as principal, would be bound by those acts that occurred within the scope of
15 the agency relationship.[1] *Nevada Nat'l Bank v. Gold Star Meat Co.*, 514 P.2d 651, 653 (Nev.
16 1973). On this issue, the Court finds that a genuine issue of material fact exists as to whether
17 Sunago was All Japan's agent and therefore denies summary judgment on All Japan's April Loan
18 claims.
19      The Parties seem to agree that there was no actual agency agreement and thus
20 proceed on an apparent agency theory. *Dixon v. Thatcher*, 742 P.2d 1029, 1031 (Nev. 1987) ("To
21 bind a principal, an agent must have actual authority, express or implied, or apparent authority.").
22 To establish an apparent agency relationship, a principal must hold his agent out as possessing
23 authority or permit him to exercise or represent himself as possessing authority. *Nevada Power
24 Co. v. Monsato*, 891 F. Supp. 1406, 1418 (D. Nev. 1995) (applying Nevada law). All Japan argues

---

[1] Here, whether Sunago's purported acts were within the scope of the alleged agency does not appear to be at issue between the Parties.

that Sunago was not an agent but merely a financial "introducer" to the loan agreements between All Japan and West Nevada. In support, All Japan argues that it never manifested that Sunago had authority because it never communicated directly with West Nevada and West Nevada never contacted All Japan to confirm Sunago's authority.

However, All Japan's argument fails to recognize that a principal can hold its agent out as possessing authority through silence. *Goldstein v. Hanna*, 635 P.2d 290, 292 (Nev. 1981) (stating that silence can give rise to an inference of affirmation) (citing Restatement (Second) of Agency § 94 cmt. a (1958)). Here, the same facts that All Japan uses to argue no existence of an agency relationship also raise the inference of the existence of an apparent agency relationship. For example, the fact that All Japan never communicated directly with West Nevada could lead a reasonable jury to conclude that Sunago acted on All Japan's behalf in loaning over $6 million to West Nevada, thereby obviating the need for direct communication between All Japan and West Nevada. This conclusion is strengthened by the fact that Sunago and All Japan had prior investment dealings and the allegation that Sunago retained signature authority over disbursement of All Japan's loans.

In addition to the above requirement of an apparent agency, reasonable reliance by a third party is required. *Tsouras v. Sw. Plumbing & Heating*, 587 P.2d 1321, 1323 (Nev. 1978) (citations omitted). To this end, All Japan argues that any reliance by West Nevada could not be reasonable because Sunago was in fact West Nevada's agent and finds support in the fact that West Nevada hired Sunago to meet with All Japan on West Nevada's behalf and that West Nevada compensated Sunago. However, DoCouto testified about his subjective belief that Sunago was All Japan's agent and the circumstances concerning Sunago's alleged representations of his authority to bind All Japan. On this evidence, the Court finds that a reasonable jury could find that DoCouto relied and that it was reasonable. Thus, the Court denies summary judgment on All Japan's breach of contract and guaranty claims on the April Loan (second and fourth causes of action).

**B. Remaining Claims**

In addition to its breach of contract and breach of guaranty claims, All Japan asserts nine additional causes of action against West Nevada. Though it moves for summary judgment on all of its causes of action, All Japan fails to address its remaining claims. Thus, the Court denies summary judgment on all remaining claims by All Japan against West Nevada.

**III. West Nevada's Complaint**

All Japan moves for summary judgment on all causes of action asserted against it by West Nevada. For the following reasons, the Court grants summary judgment in favor of All Japan on the issue of lost profits damages and, consequently, all claims seeking solely lost profits as damages. Further, it grants summary judgment in favor of All Japan on West Nevada's negligent interference with prospective economic advantage claim. Summary judgment is denied as to all other claims.

**A. Lost Profits Damages**

All Japan argues that it is entitled to summary judgment on West Nevada's claims that seek lost profits damages because West Nevada cannot prove causation or the extent of its damages with reasonable certainty. Further, All Japan argues that West Nevada failed to mitigate its damages. The Court finds the speculative nature of West Nevada's alleged damages dispositive on this issue. In an Order issued by Magistrate Judge Foley on January 24, 2007, the Court found that Evan Davis ("Davis"), West Nevada's damages expert, could not vouch for either the validity or reliability of West Nevada's purported damages and ordered that West Nevada be precluded from calling him as an expert at trial on the issue of lost profits. In addition, the Court held that West Nevada is precluded from introducing any documentary evidence or witness at trial that was not already disclosed to All Japan in support of its damages.

From the record, the Court finds that the only evidence of lost profits damages are those testified to by Davis. West Nevada has not presented any additional basis on which it can support its claim for lost profits damages. Therefore, summary judgment is granted in favor of All

Japan on all claims seeking solely lost profits damages, which include: breach of contract, breach of oral contract, promissory estoppel, and breach of the implied covenant of good faith and fair dealing. *Harrington v. Syufy Enters.*, 931 P.2d 1378, 1380 (Nev. 1997) (to be entitled to summary judgment, defendant "need only negate one element of plaintiff's case (i.e., duty, breach, causation, damages)."); *see also First Interstate Bank of Ariz. v. Murphy, Weir & Butler*, 210 F.3d 983, 986 (9th Cir. 2000). The Court now turns to the remaining claims.

**B. Negligent and Intentional Interference with Prospective Economic Advantage**

West Nevada alleges both an intentional and a negligent interference with prospective economic advantage claim against All Japan. Regarding negligent interference, the Nevada Supreme Court has refused to recognize this tort. *Local Joint Exec. Bd. of Las Vegas, Culinary Workers Union Local No. 226 v. Stern*, 651 P.2d 637, 638 (Nev. 1982) ("A small minority of jurisdictions do permit recovery for negligent interference with economic expectancies under limited circumstances . . . . We decline to adopt the minority view allowing such recovery."). According to *Stern*, "[p]urely economic loss is recoverable in actions for tortious interference with contractual relations or prospective economic advantage, but the interference must be intentional." *Id*. Summary judgment is therefore granted in favor of All Japan.

Turning to West Nevada's claim for intentional interference, the elements of this tort are: (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of a privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct. *Hutchinson v. KFC Corp.*, 809 F. Supp. 68, 72 (D. Nev. 1992).

Beginning with the first element, the Court finds that there could have existed a prospective contractual relationship with Adit Financial ("Adit"), a company from which West Nevada sought additional loans. While Adit did provide West Nevada a bridge loan of $100,000, it later declined additional funding. The record does not reflect the reasons why Adit declined,

thereby leaving open the possibility of All Japan's knowledge and intentional interference. Concerning the fourth element, All Japan argues that the actions taken by All Japan that West Nevada claims are tortious–asking for budgets, guiding disbursements, not lending additional money–would be privileged or justified under Nevada law. In support, it cites *Leavitt*, which held that where defendants "acted to protect the interests they had acquired in a valid contract . . . [s]uch action was motivated by a desire to protect these interests and is privileged." *Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1226 (Nev. 1987). The Court finds that there is a genuine issue of material fact concerning these actions because if made with the intent of interfering with West Nevada's third party contract, and not in its own interests, All Japan's conduct would neither be justified nor privileged.

The Court further finds that this claim is not barred by the economic loss doctrine at this stage in the litigation because a genuine issue of material fact exists as to the Parties' relationship. *See* discussion *infra* Section III.C. Accordingly, summary judgment on West Nevada's intentional interference with prospective economic advantage claim is denied.

**C. Fraud**

All Japan argues that West Nevada's fraud claim is barred by the economic loss doctrine. Although the Nevada Supreme Court has not decided the issue of whether the doctrine applies to creditor/debtor contracts, the Nevada federal district court, in *Yerington*, predicted that the state court would hold that the economic loss doctrine would apply. *Yerington Ford, Inc. v. Gen. Motors Acceptance Corp.*, 359 F. Supp. 2d 1075, 1081 (D. Nev. 2004). For support, the federal court noted that the Nevada Supreme Court has not limited its application of the doctrine to any particular type of case. *Id*. Further clarifying the doctrine, the court noted the well-recognized rule that tort claims based upon duties outside the contractual relationship, such as fraud in the inducement, are not barred by the economic loss doctrine. *Id.* at 1083.

Here, West Nevada passively mentions "fraud in the inducement" in its Opposition but a reading of the Complaint reveals that such a cause of action is not asserted. In West

9

Nevada's Complaint, the alleged fraud consists of actions arising out of All Japan's contractual duties, not inducement into the contract. For example, it alleges that All Japan's fraudulent conduct consists of, *inter alia*, improperly dispersing loan funds, inflating budgets to justify draining the account, and paying inflated invoices and suspect charges. Thus, unless an exception to the economic loss doctrine applies, West Nevada's fraud claim is barred.

An exception to the economic loss doctrine occurs when a defendant has an independent, non-contractual duty to the plaintiff. *Yerington*, 359 F. Supp. 2d at 1083 (citations omitted). Generally, in an arm's length creditor/debtor transaction, no duty of care arises. *Id*. at 1088, 1090. However, a duty can arise if a special relationship between the creditor and debtor is formed. *Id*. at 1090. Nevada's test for the existence of a special relationship is: (1) the conditions surrounding the relationship would place special trust and confidence in plaintiff; and (2) that defendant would have reasonably known of this confidence. *Id*. (citing *Mackintosh v. Cal. Fed. Sav. & Loan Ass'n*, 935 P.2d 1154, 1160 (Nev. 1997)).

Here, the Court finds that there is a genuine issue of material fact as to whether a special relationship existed between West Nevada and All Japan, so as to create an independent, non-contractual duty that could give rise to an independent fraud claim sounding in tort. For example, should Sunago be found to be an agent of All Japan, *see* discussion *supra* Section II.A., the fact that Sunago was in control of the April Loan proceeds could lead a reasonable jury to find that West Nevada placed special trust and confidence in All Japan, about which All Japan could reasonably be found to have known.

For these reasons, summary judgment on West Nevada's fraud claim in denied.

**D. Negligence**

Like the fraud claim, All Japan argues that West Nevada's negligence claim is barred by the economic loss doctrine. Because the Court has found that a genuine issue of material fact exists as to the presence of a non-contractual duty arising from All Japan's and West Nevada's relationship, *see* discussion *supra* Section III.C., the Court likewise denies summary judgment on

West Nevada's negligence claim. Should a reasonable jury find a non-contractual duty on the part of All Japan to West Nevada, the economic loss doctrine would not bar this cause of action. All Japan makes no other argument in support of dismissal of this claim and thus summary judgment is denied.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant/Counterclaimant All Japan's Motion for Summary Judgment (#134) is GRANTED in part and DENIED in part as follows:

1. On West Nevada's Complaint, the Motion is: (a) GRANTED in favor of All Japan on all claims in which West Nevada seeks only lost profits damages (breach of contract, breach of oral contract, promissory estoppel, and breach of implied covenant of good faith and fair dealing); (b) GRANTED in favor of All Japan on West Nevada's negligent interference with prospective economic advantage claim; and (c) DENIED on all other claims;

2. On All Japan's Counterclaims, the Motion is: (a) GRANTED in favor of All Japan on All Japan's breach of contract and breach of guaranty claims relating to the February Loan (first and third causes of action); and (b) DENIED as to all other claims.

IT IS FURTHER ORDERED that Defendant/Counterclaimant Sunago's Motion for Summary Judgment (#142) is DENIED as moot.

Dated: March 5, 2007.

_____
ROGER L. HUNT
Chief United States District Judge